Michelle, yes. You reserve two minutes for rebuttal. You can begin whenever you're ready. Thank you, Your Honor, and may it please the Court. Chris Michel for Defendants Appellants, Express Scripts, and Optum. Defendants administer prescription drug benefits for both private and federal clients. Some of our largest and most important clients are the U.S. military, Veterans Affairs, and federal employee health programs. Because plaintiffs' claims squarely implicate both our private and federal work, these cases should proceed in federal court. I'm sorry. I'm sorry. May I interrupt you for a second? Clerk, this isn't working. Maybe it's not set right. Thank you. Thank you, Your Honor, and may it please the Court. Chris Michel for Defendants Appellants, Express Scripts, and Optum. Defendants administer prescription drug benefits for both private and federal clients. Some of our largest and most important clients are the U.S. military, Veterans Affairs, and federal employee health programs. Because plaintiffs' claims squarely implicate both our private and federal work, these cases should proceed in federal court. Plaintiffs purport to disclaim defendants' work for federal clients, but that disclaimer does not preclude federal jurisdiction for at least three independent reasons. First, plaintiffs' claims target conduct that defendants carry out indivisibly for federal and non-federal clients alike. Second, plaintiffs allege harm that cannot be divided among defendants' federal and non-federal work. And third, plaintiffs assert a legal theory, public nuisance, that is not susceptible to division among defendants' federal and non-federal activity. Every federal court of appeals that has considered similar claims, and there have been several recently, has found improperly removed. That position reflects both the text and the important purpose of the federal officer removal statute, which this court has emphasized should be construed broadly. And the practical result of reversal here is not dismissal of plaintiffs' claims. It is simply that they should proceed in federal court subject to well-settled federal rules and procedures. Would you just take a second to explain? I guess this is your first point. Just explain how it works, what you're claiming is the indivisibility of the conduct of the negotiation for rebates and all that. Could you just factually just lay out what's in the record? Yes, Your Honor. I think the best, simplest place in the record to look is the Joint Appendix 1968. This is a declaration from one of our employees, Mr. Jenkins, and he's explaining how the federal employee health benefit plan rebate negotiations work. I'd also commend to the court the First Circuit's decision in the Puerto Rico case, which outlines this in some detail, and there's a district of Hawaii decision that does the same. But to try to make this somewhat more concrete, what pharmacy benefit managers do, as relevant here, is negotiate with drug manufacturers for rebates on their drugs. And critically, when they do that, they get agreements from the drug manufacturers that then go on to the formularies that PBMs offer to their clients. And critically for this case, the formularies are offered indivisibly to both private health plans, for example, an employer health plan, and federal employee health plans, for example, GEHA or other federal employee health plans. So as the First Circuit explained, there's just one rebate negotiation that takes place between the PBMs and the drug manufacturers. And that's why plaintiff's attempt to disclaim the federal aspect of it is ineffective to preclude federal jurisdiction, because there is one negotiation that is federal. Mr. Jenkins also states that they receive certain directions from the federal agencies, from DOD and from the Office of Personnel Management in connection with that, right? Absolutely, Your Honor. There's extensive direction. The Fourth Circuit in the Arlington County case, considering express scripts, our client in this case called them the alter ego of the DOD when it comes to dry care. They oversee every aspect. The DOD oversees every aspect of the program, and therefore clearly satisfies the acting under requirement. The second point that I made, and I think this is an alternative. I think you could stop right there. I think that what the First Circuit said gets us all the way to federal court on the indivisibility point. But it's equally true that the harm alleged by the plaintiffs here is indivisible. Their theory is that there was an oversupply of opioids into their jurisdictions. And they talk about the harm to, for example, young people and the fire and emergency response that was required. They're perfectly allowed to allege that claim, but there's simply no way to divide that claim between private and federal work. I think that's the import of the 3M decision from the Fourth Circuit that we submitted as a supplemental authority. It explained that if even a morsel of, in that case, contamination that went out into the public was traceable to federal activity, federal officer removal would be proper. And the same is true here. I'd like to ask you something. The Puerto Rico opinion expressed the view that the court must accept the defendant's theory of inseparability. And similar words were used, although in dicta, by a recent opinion of our court, the Adjian-Rasman. But that had been said previously by our court. And the proposition must accept the government's theory seems to me to be odd, especially if it's applied to an assertion of fact. I don't understand the proposition. Why must a court accept an assertion of a contested fact if it's not supported by anything, if the government doesn't? So what would your answer be just to that proposition that it doesn't seem to be that, well, perhaps one must accept the government's theory, but why must the court accept an asserted fact by the government which is disputed unless it's supported? Right. I think further on in the Adjian decision that Your Honor cited, it explains that the same standard should be applied to a defendant's notice of removal that is applied to a plaintiff's complaint under 12b-6. It's essentially- Must be plausibly supported. That's right. So I think if there was no plausible support for a factual allegation- You say you have plausible support. For example, in negotiating, volume obviously gives power in negotiation, and it would make no sense whatsoever for the person in your position to split apart the private and the governmental, reducing the power to negotiate for each separately, and you'd be halving your negotiating power. That's exactly right, Judge LaValle. There's the Tenth Circuit opinion in the EpiPen case that we cite in our brief lays out exactly that. It explains that the pharmacy benefit managers are purchasing cooperatives who can leverage their buying power. And I will say I could hypothesize a case where there's a factual dispute, but although my friend on the other side and I have some disputes in this case, I don't think they dispute what's at JA 1968 where Mr. Jenkins says that we do in fact conduct rebate negotiations indivisibly for federal and non-federal clients, and of course the unanimous First Circuit just recognized the same in the Puerto Rico case. This case had an alternate route to its opinion, which was that artful pleading as opposed to a detailed plea, artful pleading which simply says, well, we're not asserting in our complaint the part that could be federal, that that doesn't work because that would, among other things, that would require the federal defendant going back to state court to defend what is arguably a federal defense before a state court. So is this complaint an artful pleading? I think ultimately it is an example of artful pleading. I don't think it's necessary to attach that label to it, but I do think it's a fair label, and that it's an important point that a plaintiff can't simply disclaim based on his or her or their own say-so. After all, the federal officer removal statute, as Judge Friendly explained a long time ago, exists to protect the federal government. So it would be the federal government's interests that are ultimately being disclaimed there, and courts have an important responsibility to probe the disclaimer to make sure it actually does preclude statutory jurisdiction. But here the complaint says, well, we're not pleading this, and we're not pleading that, and we're not pleading that, and we're not pleading that, but it never specifies, well, what is it that you are pleading if you're not pleading all those different things, which it seems to me that it would put the federal court in the position of having to analyze every conceivable meaning of the complaint to see whether each of them eliminates the federal aspect, which doesn't seem to me to be justifiable to put that burden on the court. The plaintiff can always say, well, what is it that you're pleading, and analyze that issue from the point of view of whether it raises the federal questions. I think you're pointing, Your Honor, to – this is a complex disclaimer. It's about three pages long in the joint appendix, and I do think your question illustrates that there may be some difficult tasks untangling it, but at a minimum, I think this court's decisions and the Supreme Court's decisions, for example, Willingham, make clear that that kind of untangling is a question that a federal court – if any court has to do the untangling because plaintiffs have decided to bring that kind of disclaimer, it's a federal court, not a state court, that has to do that untangling given the federal interests at stake. All right. Thank you. Thank you, Your Honor. We'll hear from Ms. Bierstein. Good morning, Your Honors. May it please the Court. Andrea Bierstein for the Plaintiff's Appellees. I think the problem with my colleague's argument and with the First Circuit and the Ninth Circuit cases that they rely on is that our case is not about rebates or negotiations. What our case is about is the formularies that the PBMs design and what they offer. And what they fail to offer to their clients. And the reason this is divisible from what happens with the federal plans can be seen both in their notice of removal, but also if you look at the Fourth Circuit County of Arlington case. And here's what's distinctive about it. The PBMs develop design formularies for their private clients. And that's the conduct we challenge. We challenge what they developed and what they offered to their private clients. They do not develop the formulary for the federal government. The Department of Defense has its own Pharmacy and Therapeutics Committee. And the Department of Defense develops its own formulary. And then the PBMs administer that formulary for the government. And you can see that. Sorry, I just want to catch my breath. You can see that at the notice of removal in the appendix at 2772. You can see it in the County of Arlington case at 996F3 at 252. The Fourth Circuit specifically says the DOD contract requires the exclusive use of the DOD formulary created by the DOD's own Pharmacy and Therapeutics Committee. But what the defendants told us in their notice of removal is that what they do for the clients who let them do it is they develop formularies and utilization management tools. And if you look at our complaint, you will see that we detail that they do that through their P&T Committee. So the DOD has a P&T Committee and the defendants have a P&T Committee. If you look at our complaint, which you would find in the appendix, I'm looking particularly at the description of the development of formularies at A2869 to 2874. So if you look at that, you see that we are challenging how they develop their formularies and the formularies that the government used weren't developed by them. So no matter how much you credit their theory of the case, the issue here is what is it we're challenging? What is the conduct that's at issue? What do you do with page 2875? I think we're still on your complaint, right? That is on the complaint. I just want to make sure I'm looking at the right spot here. I'm not sure. I think it's page 70 of your complaint when you talk about PBMs have significantly more market power than the drug manufacturers with whom they negotiate drug prices. And I thought that one of the things you were doing is you were going into the negotiations of drug prices. And how does that not subsume the question of the rebates? The reason it doesn't, and I have two answers to that, the first answer is that we do talk about rebates in our complaint because rebates are the motivation. So what happens is they do a unitary negotiation of the rebate. And the rebate structure for all the plans. They sit down with the manufacturer and they negotiate a rebate structure. But that doesn't dictate the formulary. Oh, I get that. Let me finish. Let me grant you that. So it's the motive for what they do because what happens is what we've alleged is that so the rebate structure says if you give the drug a certain placement on the formulary, you'll get X rebate. And if you don't give it this placement, you'll get Y rebate. So just backing out to the 30,000-foot level, why would a party not introduce evidence of their counterparty's motive for whatever it is you're accusing them of doing? Well, we might introduce- I mean, are you saying you would not introduce evidence or argue to a jury that they had this profit motive? We would introduce evidence of the motive, but because we wouldn't be challenging the negotiation- So you're saying it's a great motive. You would assert to the jury- We would absolutely assert it's the motive, but- No, no, no. You would say, and it's a good motive. It's a valid motive. It's a praiseworthy motive. No, it's a terrible motive. Exactly. And it's not what the government does. So then how would they not be able to say the government knew about it and wanted us to do it? Now, maybe they're wrong and you prove them wrong. But I guess I'm wondering how do you keep this- Because I think I- Well, hang on a second. Because I think what you're missing- I'm not quite done. Okay. I'm sorry. I'm sorry, Your Honor. I'm just wondering how do you either excise that issue from a putative trial or, if it's still in the trial, say that their federal defense can't be relevant or can't be introduced? Because I think what that turns on is maybe a misunderstanding about how the rebate motive plays into the formulary. So, for example, the P&T Committee decides what coverage to put on the formulary. The P&T Committee could make that decision solely on the basis of public health, or the P&T Committee could, in its own self-interest, decide, well, we make more money if we do this. So what happens is the rebate structure is the same, but then the DOD decides for the federal plans how to structure the formulary, and the government makes its own decision about- Their theory, as Judge Leval pointed out, our case law says we have to credit their theory. I know you're trying to divide out the negotiations from the formularies themselves and the development of the formularies, but their theory is that it's all going to be part of the case. Well, I think that's not their theory, Your Honor. Their theory- Well, how is that different from the First Circuit case? How is that different? Wasn't that the same theory in the First Circuit case? It was not. The First Circuit case is a drug pricing case. So is the California case. The PBMs were defendants, but formularies were not at issue. The allegations in the First Circuit case are that drug prices are too high. All right. Can I ask you a different question? Yeah, sure. You already point out that the fact that this is a public nuisance claim creates additional problems. And in your complaint, you specifically say in multiple places, including Paragraph 1311, that plaintiff has suffered an indivisible injury as a result of the tortious conduct of the defendants. So explain to me how, given the nature of a public nuisance claim, and the harm it's caused to society as a whole with respect to education, health care, police, criminal justice, how this wouldn't be a situation where there's a problem with the divisibility that the waiver suggests. The fact that the harm is indivisible doesn't mean that a defendant's liability is. So, for example, if we were to try the case, we would have to show that the harm from the drugs that were paid for by the non-federal plans. Now, every drug that's paid for, that they administer, it's clear in the data what plan paid for it. We would have to show that the harm to the community from the non-federal plans alone was a significant- How many did you do damages? Was a substantial contribution. But it's no different from if Optum settled and ESI went to trial. Nobody would say you can't try the case because ESI's contribution to the harm is indivisible from Optum's. The same is true with the trial we did. Could you just answer Judge Bianco's question? I'm very curious the answer to that. I'm sorry, what was- I mean, how do you, on damages, how are damages going to be allocated if- Well, first of all, for the most part, the case is about abatement, not damages. But putting that to one side, the way you allocate damages, the way you do that here is the same as the way you do it among joint tort feasors. So you would treat the federal plans as if it was a different defendant who had another contribution that we haven't looked at. So in the same way that we allocated damages when we tried the manufacturer case in Suffolk County, there were a lot of contributors to the nuisance, including the PBMs who were not there. We have cases that say, maybe it can be allocated. I understand that it's been done in some of these cases. But why shouldn't a federal court do that? We said in Cuomo v. Crane the core purpose of the federal officer removal is to let the validity of the federal defense be tried in federal court. And if the result of their federal work, it creates some allocation issues with respect to damages, a federal court should be doing that, not a state court, right? Well, it doesn't create an allocation issue. That is, a jury has to decide what percentage of the harm these defendants caused. It doesn't have to decide how much of the remaining harm was caused by all the other defendants who aren't present. A state court, before it gets to a jury, a state court is going to have to decide whether what you're suggesting is the way it should be allocated or not. How the jury should be instructed on that, right? Doesn't a judge decide that? Well, if the defendants are not, if you imagine for a moment in my hypothetical, because I think it will illustrate the point, that a different company did the federal plans and they were not a defendant, I don't think the allocation issue. No, we don't have that. I understand it's the same defendant, but they are severable in exactly the same way. That is, the federal plans are administered. A state court is going to decide how their federal work for purposes of damages should be exempted from damages. I don't think that's the case, Your Honor, and here's the reason. The federal work is clearly in the data of every drug they paid for pursuant to a federal plan. Nobody has to draw lines. They know X thousand pills, federal plans, we're not thinking about those. In the same way that they know Y thousand pills from these plans, so in the same way that the jury didn't have to think about the PBMs when we tried the manufacturers, it doesn't have to think about any of the other contributors, including the federal plans. So the jury isn't allocating the federal government's share or the share of what the federal plans did. It's simply allocating the share that's in front of them, which is the prescriptions that were dispensed and paid for pursuant to formularies that they designed and they developed. The federal government didn't use plans they designed and developed. It's as if they were a different company. They used a different P&T committee. All right. All right. We have it. We have your argument. Thank you. Thank you. Mr. Michel, you have two minutes in rebuttal. Thank you, Your Honor. Just a few brief points in rebuttal. I think my friend made several important concessions in that argument, including that this court would have to, I think, split with the First Circuit and the Ninth Circuit, and I would add the Fourth Circuit. If it were to adopt the plaintiff's position, we would urge you not to do that. More specifically, I think my friend conceded that the rebates are conducted indivisibly, rebate negotiations are conducted indivisibly among federal and non-federal clients, and I think that's enough to resolve the case. After all, the statute says any act, one act is enough. Your argument is, as you heard, it's about the formularies. It's not about the rebates. It's about the formularies that distinguishes it from the First Circuit case and is why. With respect, that's not a valid distinction because the rebates are given in return for placement on the formularies. And again, that is true, but it is also all over the plaintiff's complaint. If you look at, for example, page A1577, that's the Westchester complaint. I know there's a lot in the JA. There are pages and pages and pages in which plaintiffs allege that the rebates were given in exchange for placement on the formularies, and they say that was part of the nuisance. If you look at page three of my friend's answering brief, that's the first bullet point when they describe their theory of the case. So those are their allegations, and we have the right to bring the case into federal court on their allegations. My friend talked a little bit about the TRICARE formulary, which is administered by DOD. I don't think she said anything about the Federal Employee Health Benefits Plans, which are separate from TRICARE and which were the basis of the First Circuit's decision and are the basis of Mr. Jenkins' declaration on A1968. We're also challenging, as the Fourth Circuit decision in Arlington County points up, things other than just the basis for removal is not just the rebate negotiations, because that's not all they're challenging. They're also challenging the flow of opioids into the community, which implicates, as the Fourth Circuit explained, prescriptions that are dispensed by my clients for the Department of Defense. And that's a completely separate, independent basis for federal officer removal that I don't think they answered. Finally, as Judge Bianco noted, the relief in this case and the harm alleged in this case is not indivisible. It is not divisible. It is indivisible. They talked about, for example, abatement, but they're not proposing that abatement be, that military veterans and federal employees be excluded from their abatement plans, as the Fourth Circuit said, only if they swore off every morsel of federal conduct would there not be a basis for federal officer removal. And the last two short points, if this disclaimer is going to be parsed, it should absolutely be parsed by a federal court, not a state court, as this court explained in Crane and Isaacson. And finally, although the court doesn't need to reach this issue, at the very least, these claims are relating to federal conduct, and by the terms of the statute after 2011, the fact that they relate to federal conduct is enough to bring it within the federal officer removal statute. So we ask that this court reverse. Thank you, Your Honor. Thank you. We'll reserve decision. Have a good day.